Lani MOORE, et al.

v.

**DISTRICT OF COLUMBIA, et al., Appellants.**

No. 88–7003.

United States Court of Appeals, District of Columbia Circuit.

Argued En Banc May 9, 1990.

Decided June 19, 1990.

Donna M. Murasky, Asst. Corp. Counsel, with whom Herbert O. Reid, Sr., Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, were on the brief, for appellants. Frederick D. Cooke, Jr., Atty., Office of the Corp. Counsel, also entered an appearance for appellants.

David A. Strauss, with whom Matthew B. Bogin, Michael J. Eig and Margaret A. Kohn, were on the brief, for appellees.

Paul Weckstein, Kathleen Boundy and Shelley R. Jackson, were on the brief for amicus curiae Senators Tom Harkin, James M. Jeffords, Edward M. Kennedy, John F. Kerry, Paul Simon, former Senator Lowell P. Weicker, Jr., and Representatives Augustus Hawkins, Major R. Owens and Pat Williams.

William H. Lewis, Jr., and Hunter L. Prillaman, were on the brief for amicus curiae, For Love of Children, Inc.

Before WALD, Chief Judge, and MIKVA, EDWARDS, RUTH B. GINSBURG, SILBERMAN, BUCKLEY, WILLIAMS, D.H. GINSBURG, SENTELLE and THOMAS, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

The issue in this case is whether the Handicapped Children's Protection Act ("HCPA"), 20 U.S.C. § 1415(e)(4)–(f) (1988), authorizes a court to award attorney fees to a party who has prevailed in an administrative proceeding under the Education of the Handicapped Act ("EHA"), 20 U.S.C. §§ 1400–1485 (1988). In an action before the District Court, the appellees, several handicapped children and their parents (collectively "Moore"), were awarded fees in-

curred in their successful administrative proceedings against the appellant, District of Columbia ("D.C."). *See Moore v. District of Columbia*, 666 F.Supp. 263 (D.D.C. 1987). On appeal, a divided panel of the court reversed. *See Moore v. District of Columbia*, 886 F.2d 335 (D.C.Cir.1989). Moore then filed a suggestion for *en banc* consideration, and the court decided to rehear the case. We now affirm.

In upholding the judgment of the District Court, we join the four circuit courts that have addressed the question in concluding that HCPA *does* authorize an award of attorney fees to a parent who prevails in EHA administrative proceedings. *See McSomebodies v. Burlingame Elementary School*, 897 F.2d 974 (9th Cir.1989) (as supplemented Mar. 2, 1990); *Mitten v. Muscogee County School Dist.*, 877 F.2d 932 (11th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1117, 107 L.Ed.2d 1024 (1990); *Duane M. v. Orleans Parish School Bd.*, 861 F.2d 115 (5th Cir.1988); *Eggers v. Bullit County School Dist.*, 854 F.2d 892, 898 (6th Cir.1988); *see also Counsel v. Dow*, 849 F.2d 731, 740 n. 9 (2d Cir.) (dictum), *cert. denied*, 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988); *Arons v. New Jersey State Bd.*, 842 F.2d 58, 62 (3d Cir.) (dictum), *cert. denied*, 488 U.S. 942, 109 S.Ct. 366, 102 L.Ed.2d 356 (1988). Accordingly, we vacate the decision of the panel; we also affirm the judgment of the District Court insofar as it holds that Moore is entitled to an award of fees under HCPA.

## I. BACKGROUND

EHA conditions federal funds for state special education programs on the development of a state "policy that assures all handicapped children the right to a free appropriate public education." 20 U.S.C. § 1412(1). To guarantee that the policy is faithfully administered, EHA requires states to afford handicapped children and their parents various "procedural safeguards." *Id.* § 1415(a). Included among these procedural safeguards are notice of proposed individualized education programs, *see id.* § 1415(b)(1)(C); "an opportunity to present complaints with respect to" such programs, *id.* § 1415(b)(1)(E); "an impartial due process hearing" when such complaints are made, *id.* § 1415(b)(2); and state agency review of the outcome of any due process hearing, *see id.* § 1415(c). *See generally Honig v. Doe*, 484 U.S. 305, 309–12, 108 S.Ct. 592, 596–98, 98 L.Ed.2d 686 (1988). In addition, during the course of any administrative proceeding, handicapped children and their parents have "the right to be accompanied and advised by counsel." 20 U.S.C. § 1415(d)(1). "[A]ny party aggrieved" by the final outcome of the administrative process may seek judicial review by filing an action in state court or federal district court. *Id.* § 1415(e)(2).

As initially enacted, EHA did not provide for recovery of attorney fees. In *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), the Supreme Court held that EHA furnished the exclusive remedy for various kinds of challenges to state special education programs, thereby foreclosing joinder of claims based on statutes authorizing recovery of attorney fees. *See id.* at 1006–21, 104 S.Ct. at 3465–73. Congress responded by enacting HCPA, Pub.L. No. 99–372, 100 Stat. 796 (1986). Among other things, HCPA provides:

> In any action or proceeding brought under this subsection, the court in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a handicapped child or youth who is the prevailing party.

20 U.S.C. § 1415(e)(4)(B).[1]

The question posed by this suit is whether HCPA authorizes a court to award fees to a parent [2] who prevails in administrative proceedings required by EHA. After securing an order of special education placement in an administrative proceeding against D.C., Moore filed an action in the District Court seeking to recover her attor-

---

1. HCPA also nullifies the holding in *Smith* that EHA furnishes the exclusive remedy for claims within its scope. *See id.* § 1415(f).

2. We use the term "parent" to refer to either the parent or the guardian of a handicapped child.

ney fees under section 1415(e)(4)(B). The trial judge concluded that HCPA authorized an award of fees to Moore, 666 F.Supp. at 265–66, and such an award was granted. D.C. appealed to this court, arguing that HCPA authorizes the recovery of attorney fees only if the parent *loses* at the administrative level and then successfully challenges the administrative determination in court. D.C. also challenged the size of the District Court's fee award as unreasonable. A divided panel reversed, *see* 886 F.2d at 337–50, and Moore then sought *en banc* consideration. The court subsequently decided to rehear the case *en banc* to consider whether HCPA authorizes a court to award attorney fees to a party who prevails in an administrative proceeding under EHA.

## II. ANALYSIS

This case turns on a straightforward issue of statutory construction: does HCPA authorize recovery of fees when a parent prevails in an EHA administrative proceeding or only when the parent *loses* in such a proceeding and then prevails in a civil action attacking the adverse administrative determination? This is not a question of first impression in the federal system. Relying on the text and legislative history of HCPA, the four circuit courts of appeals to address the matter have unanimously concluded that parents who prevail at the administrative stage *are* entitled to recover their fees under section 1415(e)(4)(B). *See McSomebodies v. Burlingame Elementary School*, 897 F.2d 974 (9th Cir.1989) (as supplemented Mar. 2, 1990); *Mitten v. Muscogee County School Dist.*, 877 F.2d 932 (11th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1117, 107 L.Ed.2d 1024 (1990); *Duane M. v. Orleans Parish School Bd.*, 861 F.2d 115 (5th Cir.1988); *Eggers v. Bullit County School Dist.*, 854 F.2d 892, 898 (6th Cir.1988); *see also Counsel v. Dow*, 849 F.2d 731, 740 n. 9 (2d Cir.) (dictum), *cert. denied,* 488 U.S. 942, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988); *Arons v. New Jersey State Bd.*, 842 F.2d 58, 62 (3d Cir.) (dictum), *cert. denied,* 488 U.S. 955, 109 S.Ct. 366, 102 L.Ed.2d 356 (1988).[3] We find the reasoning of our sister circuits persuasive.

### A. Statutory Text

We begin, as we must, with an examination of the statutory text. *See, e.g., United States v. Bass*, 404 U.S. 336, 339, 92 S.Ct. 515, 518, 30 L.Ed.2d 488 (1971). In our view, construing HCPA to authorize recovery of fees by a parent who prevails in EHA administrative proceedings best comports with "the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988).

1. The Statutory Reference to "In any action or proceeding"

HCPA provides that a court may award attorney fees "[i]n any *action or proceeding* brought under this subsection." 20 U.S.C. § 1415(e)(4)(B) (emphasis added). We are at a loss to give meaning to the distinction between "action" and "proceeding" short of inferring that Congress meant to authorize fees for parents who prevail either in a *civil action* or in an *administrative proceeding* under EHA. It is true that the phrase "action or proceeding" need not invariably refer to the distinction between civil actions and administrative proceedings wherever that phrase appears in the legal universe. But in the *particular* statutory context that gives meaning to the words of HCPA, we find this to be the most natural reading.[4] Ad-

---

**3.** For commentary reaching the same conclusion, see Schreck, *Attorneys' Fees for Administrative Proceedings under the Education of the Handicapped Act: of Carey, Crest Street and Congressional Intent*, 60 TEMP.L.Q. 599 (1987).

**4.** Words are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpene-

trate the other, but all in their aggregate take their purport from the setting in which they are used....

*NLRB v. Federbush Co.*, 121 F.2d 954, 957 (2d Cir.1941) (L. Hand, J.), *quoted in Shell Oil Co. v. Iowa Dep't of Revenue*, 488 U.S. 19, 109 S.Ct. 278, 281 n. 6, 102 L.Ed.2d 186 (1988).

ministrative proceedings occupy a central place in the remedial framework established by EHA. *See generally Honig*, 484 U.S. at 311–12, 108 S.Ct. at 597–98. Indeed, EHA and HCPA unambiguously use the terms "action" and "proceeding" in several places to distinguish between the administrative and judicial phases of EHA litigation. *See* 20 U.S.C. § 1415(e)(2) (authorizing "civil action" in state or federal court and requiring that "[i]n any *action* ... the court shall receive the records of the administrative *proceedings....*" (emphasis added)); *id.* § 1415(e)(4)(D) (using "action or proceeding" and then drawing parallel distinctions between civil actions governed by the Federal Rules of Civil Procedure and "administrative proceedings" and between "court" and "administrative officer"). "[T]here is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning." *Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433, 52 S.Ct. 607, 609, 76 L.Ed. 1204 (1932).

The contemporaneous judicial construction of the phrase "action or proceeding" in another fee-shifting statute likewise suggests that HCPA was intended to permit recovery of fees by a parent who prevails at the administrative stage. *See New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980). The issue in *Gaslight* was whether section 706(k) of the Civil Rights Act of 1964 permitted a party to bring suit in federal court to recover fees incurred in necessary state administrative and judicial proceedings under Title VII. Section 706(k) provides that "[i]n any action or proceeding under this subchapter [Title VII] the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee...." 42 U.S.C. § 2000e–5(k) (1982) (emphasis added). The Court held that

> [t]he words of § 706(k) leave little doubt that fee awards are authorized for legal work done in "proceedings" other than court actions. Congress' use of the broadly inclusive disjunctive phrase "action or proceeding" indicates an intent to subject the losing party to an award of attorney's fees and costs that includes expenses incurred for administrative proceedings.

447 U.S. at 61, 100 S.Ct. at 2029. The Court expressly rejected the claim that section 706(k) authorizes fee-shifting only when "the complainant ultimately finds it necessary to sue in federal court to obtain relief other than attorney's fees":

> It would be anomalous to award fees to the complainant who is unsuccessful or only partially successful in obtaining state or local remedies, but to deny an award to the complainant who is successful in fulfilling Congress' plan that federal policies be vindicated at the state or local level. Since it is clear that Congress intended to authorize fee awards for work done in administrative proceedings, *we must conclude that [Title VII's] authorization of a civil suit in federal court encompasses a suit solely to obtain an award of attorney's fees for legal work done in state and local proceedings.*

*Id.* at 66, 100 S.Ct. at 2032 (emphasis added).

*Gaslight* constituted part of the "contemporary legal context" in which Congress enacted HCPA. *Cannon v. University of Chicago*, 441 U.S. 677, 699, 99 S.Ct. 1946, 1958, 60 L.Ed.2d 560 (1979). As we discuss below, the legislative history of HCPA reveals that Congress consciously drafted the statute to incorporate *Gaslight*'s reading of section 706(k). *See* Part II.B.1–2 *infra.* But even without the benefit of this extrinsic aid to construction, it would be both "appropriate [and] ... realistic *to presume* that Congress was thoroughly familiar with" the Court's decision in *Gaslight* "and that it expected its enactment to be interpreted in conformity with" that precedent. *Cannon*, 441 U.S. at 699, 99 S.Ct. at 1958. (emphasis added).

By the same token, judicial constructions that *postdate* enactment of HCPA are less relevant for inferring Congress' intentions. D.C. draws our attention to *North Carolina Department of Transportation v. Crest Street Community Council, Inc.*, 479 U.S. 6, 107 S.Ct. 336, 93 L.Ed.2d 188

(1986). In *Crest Street,* the Court held the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (1982),[5] did not create a right to sue for fees incurred in administrative proceedings initiated to block a proposed highway construction project under Title VI of the Civil Rights Act of 1964. The Court reasoned that this suit did not constitute an *"action or proceeding to enforce* the civil rights laws listed" in section 1988. *Id.* at 12, 107 S.Ct. at 340 (emphasis supplied by Court). The Court also discounted the suggestion that it would be "anomalous" under section 1988 to award fees to parties who prevail in civil litigation while denying fees to those who prevail in administrative proceedings. *See id.* at 13–14, 107 S.Ct. at 340–41.

It is unnecessary for us to address whether the reasoning in *Crest Street* and *Gaslight* can be reconciled.[6] For no matter how much *Crest Street* diminishes the authority of *Gaslight* as *a judicial precedent,* it cannot diminish *Gaslight 's* significance as *evidence of Congress' intention* in using the phrase "action or proceeding" in HCPA. *See Cannon,* 441 U.S. at 699, 99 S.Ct. at 1958–59 (construing statute in light of more generous implied-cause-of-action precedent overruled only after statute's enactment); *accord Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 381–82, 102 S.Ct. 1825, 1840–41, 72 L.Ed.2d 182 (1982). At the time that HCPA was enacted, *Gaslight* was *reasonably* assumed to be good law,[7] and even if *Crest Street* is viewed as undermining that assumption, "we could not, in reason, interpret the statute[ ] [before us] as though the

assumption never existed." *Welch v. Texas Dep't of Highways & Pub. Transp.,* 483 U.S. 468, 496, 107 S.Ct. 2941, 2958, 97 L.Ed.2d 389 (1987) (Scalia, J., concurring). Insofar as *Gaslight* construed the phrase "in any action or proceeding" to authorize recovery of fees by a party who prevails at the administrative level, we impute to Congress an intention that the phrase be likewise construed in HCPA.

2. Section 1415(e)(4)(D)

Construing HCPA to authorize recovery of attorney fees by a parent who prevails at the administrative level is also the only way reasonably to make sense of the role that HCPA assigns the state administrative officer. The pertinent provision in the statute provides that:

> No award of attorneys' fees and related costs may be made in any action or proceeding under this subsection for services performed subsequent to the time of a written offer of settlement to a parent or guardian, if—
>
> > (i) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure *or, in the case of an administrative proceeding, at any time more than ten days before the proceeding begins;*
> >
> > (ii) the offer is not accepted within ten days; and
> >
> > (iii) the court *or administrative officer finds that the relief finally obtained* by the parents or guardian is

5.  In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.
    *Id.*

6.  The one circuit court of appeals to address the issue has held that *Gaslight's* construction of section 706(k) survives *Crest Street's* construction of section 1988. *See Jones v. American State Bank,* 857 F.2d 494, 496–98, 498 n. 10 (8th Cir.1988); *cf. Ball v. Abbott Advertising, Inc.,* 864 F.2d 419, 420 (6th Cir.1988) (acknowledging issue without resolving it). The Fifth Circuit,

*see Duane M.,* 861 F.2d at 118–19, and Sixth Circuit, *see Eggers,* 854 F.2d at 895, have reconciled the decisions in the context of HCPA, finding HCPA to be closer to section 706(k) than section 1988 in all relevant respects.

7.  *See White v. New Hampshire Dep't of Employment Sec.,* 455 U.S. 445, 451 n. 13, 102 S.Ct. 1162, 1166 n. 13, 71 L.Ed.2d 325 (1982) (noting with approval reasoning of *Gaslight); Schreck, supra* note 3, at 659 (noting that it was "entirely reasonable" to rely on *Gaslight* before *Crest Street* was decided); *cf.* Eskridge, *Overruling Statutory Precedents,* 76 GEO.L.J. 1361, 1435 (1988) (suggesting *Crest Street* broke sharply with rationale of *Gaslight).*

not more favorable to the parents or guardian than the offer of settlement. 20 U.S.C. § 1415(e)(4)(D) (emphasis added). Because an administrative officer would have occasion to make the comparative finding required by section 1415(e)(4)(D)(iii) only in the event that the parent achieves "final[ ]" relief in an administrative proceeding, HCPA clearly contemplates that the issue of attorney fees will survive an otherwise successful outcome for the parent at the administrative stage.[8]

D.C. suggests a different interpretation. It contends that section 1415(e)(4)(D) envisions a situation in which a parent rejects a settlement offer by a school district, loses at the administrative level, but then prevails in a civil action challenging the adverse administrative determination on the merits. In that case, D.C. argues, the court might remand the case to the administrative officer to determine whether the relief obtained in court is more favorable to the parent than was the rejected settlement offer.

We find this construction unpersuasive. In addition to being procedurally counterintuitive,[9] D.C.'s interpretation cannot be reconciled with *the timing provisions* of section 1415(e)(4)(D)(i). When the "relief finally obtained" is awarded *in court*, only the ten-day pretrial limit "prescribed by Rule 68 of the Federal Rules of Civil Procedure" is relevant.[10] If a parent were entitled to fees *only* upon prevailing in court, however, the independent ten-day limit applicable "in the case of an administrative proceeding" would be meaningless, for all settlement offers made more than ten days

before the administrative proceeding are necessarily made more than ten days before any civil review action. The only circumstance in which the ten-day time limit applicable to administrative proceedings becomes relevant is when the "relief finally obtained" is awarded *in the administrative proceeding.* For this reason, section 1415(e)(4)(D)(i) must presuppose that a parent who prevails at the administrative stage is otherwise eligible to recover his attorney fees.

### 3. HCPA § 4

Further evidence of Congressional intent may be gleaned from the provision in HCPA authorizing the Government Accounting Office ("GAO") to conduct a "study of the impact of" attorney fees on EHA practice. Pub.L. No. 99–372, § 4(a), 100 Stat. 797 (uncodified). The study is to identify, *inter alia,* "[t]he number[ ] . . . of written decisions under sections [1415](b)(2) and (c)"—the EHA due process hearing and administrative appeals provisions—as well as "the prevailing party in each such decision." *Id.* § 4(b)(1). It would be difficult—although, with sufficient imagination, not impossible—to explain how this information would be relevant to the study were the prevailing parties in these administrative proceedings not entitled to recovery of their fees. Consequently, we view section 4 of HCPA as further evidence that Congress envisioned recovery of fees by parents who prevail at the administrative stage.

---

**8.** It is undisputed that HCPA permits only a court to award fees. *See* 20 U.S.C. § 1415(e)(4)(B) ("In any action or proceeding brought under this subsection, *the court* . . . may award reasonable attorneys' fees. . . ." (emphasis added)); *see also* S.Rep. No. 112, 99th Cong., 2nd Sess. 14 (1985), U.S.Code Cong. & Admin.News 1986, pp. 1798, 1804 ("The committee intends that [the HCPA bill] will allow the Court, but not the hearing officer, to award fees. . . .").

**9.** In cases in which the court fashions a remedy for a handicapped child denied appropriate educational placement, the court will certainly be more familiar with the nature of the remedy

than would be the administrative officer. It is extremely unlikely, then, that the court would seek the benefit of the administrative officer's views on the relative benefits of such a remedy and a rejected settlement offer.

**10.** At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued. . . . If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.

### 4. The Statutory Reference to "under this subsection"

In an effort to overcome the foregoing evidence of Congress' intent to authorize fees for a parent who prevails in an administrative proceeding under EHA, D.C. points to the language in section 1415(e)(4)(B) that says fees are available "in an[ ] action or proceeding *brought under this subsection.*" 20 U.S.C. § 1415(e)(4)(B) (emphasis added). Section 1415(e)(2) authorizes a civil cause of action by "[a]ny party aggrieved by the findings and decision" of an EHA administrative decisionmaker.[11] According to D.C., the phrase "under this subsection" in section 1415(e)(4)(B) must be read to refer to section 1415(e)(2), thereby limiting a court's authority to award fees to cases in which a parent challenges an adverse administrative determination on the merits. We disagree.

It is by no means necessary to read the phrase "under this subsection" to refer to section 1415(e)(2). A suit to recover fees *directly* under section 1415(e)(4) is as much a suit "under" subsection 1415(e) as is a suit challenging an adverse administrative determination under section 1415(e)(2). Nor does anything in the text of EHA indicate that section 1415(e)(2) provides the *exclusive* judicial remedy under subsection 1415(e).[12]

Indeed, the text and structure of HCPA directly support the inference that Congress intended section 1415(e)(4) to provide an independent cause of action for fees.

Like section 1415(e)(2), section 1415(e)(4) provides that "[t]he district courts of the United States shall have jurisdiction of actions brought under this subsection without regard to the amount in controversy." 20 U.S.C. § 1415(e)(4)(A). If Congress had not intended that parents be able to sue for fees under section 1415(e)(4) independently of bringing a section 1415(e)(2) review action, this separate "amount in controversy" waiver would have been unnecessary.[13] Likewise, if Congress had not intended section 1415(e)(4) to furnish an independent cause of action, it seems doubtful that it would have directed the GAO to report separately "[t]he number ... of civil actions *brought under section [1415](e)(2),*" Pub.L. No. 99–372, § 4(b)(2), 100 Stat. 797 (uncodified) (emphasis added), and "the specific amount of attorneys' fees, costs and expenses awarded to the prevailing party, *in each action and proceeding under section [1415](e)(4),*" *id.* § 4(b)(3) (emphasis added).

The most that D.C.'s argument shows is that Congress could have spoken more precisely, using the word "subsubsection" or "subpart" or "paragraph" instead of "subsection" in section 1415(e)(4)(B). In at least one other place in HCPA, Congress clearly makes the same "mistake." *See* 20 U.S.C. § 1415(f) (referring to section 1415(b)(2) as a "subsection[ ]"). This phraseological nicety—which, by itself, proves nothing—cannot be permitted to trump the numerous compelling textual indications of Congress' intention to authorize recovery of fees by a

---

Fed.R.Civ.P. 68.

**11.** Any party aggrieved by the findings and decision made [in an EHA administrative proceeding] ... shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy. In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.
20 U.S.C. § 1415(e)(2).

**12.** It is clear that section 1415(e)(2) furnishes the exclusive judicial remedy—under the EHA, *see* 20 U.S.C. § 1415(f)—for attacking *the merits* of an administrative decision. But to suggest for this reason that section 1415(e)(2) is the exclusive judicial remedy under subsection 1415(e) merely begs the question of whether Congress intended section 1415(e)(4) to support an independent action for fees.

**13.** The independent waiver was part of the original EHA statute. *See* 20 U.S.C. § 1415(e)(4) (1982). But rather than delete this provision as superfluous, Congress renumbered paragraph (e)(4) as (e)(4)(A) and incorporated the provision in HCPA, *see* Pub.L. No. 99–372, § 2, 100 Stat. 796, reinforcing the inference that the retention of both waivers was deliberate and intended to have substantive consequences.

parent who prevails in EHA administrative proceedings.

## B. Legislative History

As we have explained, we believe that allowing a parent who prevails at the administrative stage to sue for attorney fees best comports with the text and structure of HCPA considered as a whole. But insofar as "the language of the statute does not make [Congress' intention] *crystal clear*," we turn to the "legislative history to determine whether ... Congress intended that the statute apply to the particular cases in question." *Allen v. State Bd. of Elections*, 393 U.S. 544, 570, 89 S.Ct. 817, 834, 22 L.Ed.2d 1 (1969) (emphasis added). The legislative history, we find, gives firm support to the view of the statute espoused by Moore.

D.C. opposes our reliance on legislative history. It notes that, under the "American Rule," parties are presumed to be responsible for their own attorney fees. Consequently, D.C. maintains, any textual ambiguities in the statute must be resolved *against* recovery of fees. At a minimum, D.C. argues, in the absence of clear textual authorization, a finding that a statute authorizes fee shifting in a particular situation must be supported by an exceptionally clear showing in the legislative history.

We believe that D.C.'s argument mischaracterizes the applicability of the American Rule. Under existing precedent, this background norm of interpretation holds merely that a court may not *imply* authorization for fee shifting in the face of *statutory silence*. *See, e.g., Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247–68, 95 S.Ct. 1612, 1616–27, 44 L.Ed.2d 141 (1975). The Supreme Court has never suggested that the American Rule displaces ordinary principles of statutory construction when the scope of an *express* fee-shifting provision is arguably ambiguous. The only objective in such a situation is to determine what "Congress intended," *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 559, 106 S.Ct. 3088, 3095, 92 L.Ed.2d 439 (1986), and for that purpose the Court has re-

peatedly consulted legislative history without any indication that authorization for fees depends on some heightened showing of congressional approval. *See, e.g., id.* at 559–60, 106 S.Ct. at 3095–96; *Crest Street*, 479 U.S. at 12–13, 107 S.Ct. at 340–41; *Gaslight*, 447 U.S. at 63, 100 S.Ct. at 2030–31. In this case, an inquiry into the legislative history removes any doubt that Congress intended parents who prevail in EHA administrative proceedings to be able to recover their attorney fees.

### 1. House of Representatives

D.C. does not dispute that the House of Representatives expressly contemplated that HCPA would authorize recovery of fees by a parent who prevails at the administrative level. As originally introduced in the House, HCPA provided for the recovery of attorney fees only in "an[] *action* brought under this subsection." H.R. 1523, 99th Cong., 2nd Sess. 2 (1985) (emphasis added). Over the opposition of Representatives who preferred that recovery of fees be permitted only "if it becomes necessary ... to bring [a matter] to the courts," *Transcript of the House Committee on Education and Labor Markup of the Handicapped Children's Protection Act of 1985 (H.R. 1523)*, 99th Cong., 2nd Sess. 171 (Sept. 11, 1985) (statement of Rep. Jeffords), the bill was amended in markup to add the words "or proceeding." As explained in the report accompanying the bill, the committee relied on *Gaslight* in concluding that the addition of this language would extend eligibility for fees to parents who prevail at the administrative level:

The "action or proceeding" language in section 2 of the bill is identical to the language in title VII of the Civil Rights Act of 1964, interpreted by the Supreme Court in *New York Gaslight Club v. Carey*. In *Gaslight*, the Court held that the use of the phrase "action or proceeding" indicates an intent to subject the losing party to an award of attorneys' fees, expenses and costs incurred in court. *The Court's decision also established a similar right under title VII to obtain an award of fees, costs, and ex-*

*penses incurred in mandatory state and local administrative proceedings, even where no lawsuit is filed.*

. . . .

. . . [I]f a parent prevails on the merits at an administrative proceeding (and the agency does not appeal the decision), the parent may be awarded reasonable attorneys' fees. . . .

H.R.REP. No. 296, 99th Cong., 2nd Sess. 5 (1985) (citation omitted) (emphasis added).

2. The Senate

Proceedings in the Senate reflect a similar understanding. The Committee on Labor and Human Resources initially reported a complicated measure requiring, *inter alia*, that a school pay for an attorney to represent a handicapped child and his parents whenever the school itself is represented by counsel in EHA administrative proceedings. *See* S.REP. No. 112, 99th Cong., 2nd Sess. 8 (1985) [hereinafter S.REP. No. 112]. However, the Senate report also contained the "additional views" of twelve senators favoring a substitute bill that used the "action or proceeding" formula ultimately adopted by the full Senate. Like their House counterparts, these Senators expressed their understanding that this language would have the same effect as the language construed in *Gaslight:*

> The committee . . . intends that [the attorney fee provision] should be interpreted consistent with fee provisions of statutes such as title VII of the Civil Rights Act of 1964 which authorizes courts to award fees for time spent by counsel in mandatory administrative proceedings under those statutes. *See New York Gaslight Club, Inc. v. Carey* (compare *Webb v. Board of Education for Dyer County,* [471 U.S. 234, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985)], in which the court

declined to award fees for work done at the administrative level because the statute under which the suit was brought did not require the exhaustion of administrative remedies prior to going to court).

*Id.,* 479 U.S. at 14, 107 S.Ct. at 341 (citations omitted).

D.C. characterizes this passage as "ambiguous," suggesting that the report may have been referring to *Gaslight* merely to suggest that a party should be able to recover fees *incurred* in necessary administrative proceedings *if* the parent prevails in a civil action. We find this reasoning strained. *Gaslight* unambiguously concluded *both* that section 706(k) authorizes recovery of fees incurred in necessary administrative proceedings *and* that a party who prevails at that level can sue for fees. Indeed, the Court inferred that Congress intended to authorize fees for the prevailing party in administrative proceedings precisely *because* availing oneself of available administrative remedies is necessary under Title VII. *See* 447 U.S. at 65–66, 100 S.Ct. at 2031–32, *see also Duane M.,* 861 F.2d at 118 (distinguishing *Crest Street* on this ground); *Eggers,* 854 F.2d at 895 (same).[14]

D.C. also suggests that floor debate in the Senate evidences disagreement about whether HCPA authorizes fees for parents who prevail at the administrative level. It is well established that the remarks of individual congressmen on the floor are entitled to less weight than are committee reports. *See, e.g., United States v. International Union United Auto., Aircraft & Agricultural Implement Workers,* 352 U.S. 567, 585, 77 S.Ct. 529, 538, 1 L.Ed.2d 563 (1957). But, in any event, we do not view the statements to which D.C. refers

---

**14.** D.C. also suggests that insofar as the Senate expressed its intention that courts construe HCPA "consistent" with other fee-shifting statutes, it is appropriate to construe HCPA consistently with the Court's subsequent interpretation of 42 U.S.C. § 1988 in *Crest Street.* The Senate report, however, states that HCPA is to be construed "consistent with fee provisions of statutes *such as title VII of the Civil Rights Act of 1964.*" S.REP. No. 112 at 14, U.S.Code Cong. & Admin. News 1986, p. 1804 (emphasis added). Thus,

the Senate intended that HCPA be construed "consistent" with how *Gaslight* construed section 706(k). Nor do we believe that Congress meant to tie final resolution of a parent's eligibility for fees to *subsequent* judicial decisions. At the time that Congress enacted HCPA, it had no reason to anticipate that the Court would construe "action or proceeding" any differently from how the phrase had been construed in *Gaslight. See supra* note 7.

as conflicting with the report of the Labor and Human Resource Committee.

The only Senator to address the question during the floor debate unequivocally indicated that parents would be able to recover fees after prevailing at the administrative level. Senator Simon explained that the bill had been drafted with the Court's analysis in *Gaslight* in mind:

> The language of S. 415, which permits the award of a reasonable attorney fee in any action *or proceeding* brought under this subpart, is identical to the language of title VII of the Civil Rights Act of 1964, interpreted by the Supreme Court in *New York Gaslight Club v. Carey.* The Court stated:

> Congress' use of the broadly inclusive disjunctive phrase "action or proceeding" indicates an intent to subject the losing party to an award of attorney's fees and costs that includes expenses incurred for administrative proceedings.

> The Court's decision in *Gaslight further established the right under title VII to sue solely to obtain an award of attorney's fees for legal work done in State and local proceedings.* As the Court stated:

> > It would be anomalous to award fees to the complainant who is unsuccessful or only partially successful in obtaining state or local remedies, but to deny an award *to the complainant who is successful* in fulfilling Congress' plan that federal policies be vindicated at the state or local level.

> Under the Court's reasoning, since the Education of the Handicapped Act, like title VII, requires parents to exhaust administrative remedies before seeking judicial relief, prevailing parties under the Education of the Handicapped Act must also be entitled to recover legal fees for the costs of mandatory proceedings.

131 CONG.REC. 21,392 (1985) (citations omitted) (emphasis added). Senator Simon was a member of the Committee on Labor and Human Resources and one of the twelve Senators who signed the "additional views" portion of the committee report.

D.C. draws heavily on the remarks of Senator Weicker. In introducing the HCPA bill in the full Senate before it was referred to committee,[15] Senator Weicker characterized it as follows:

> [T]he legislation I am introducing today is a specific response to the court's opinion in Smith versus Robinson. My amendment to Public Law 94–142 is for the limited purpose of clarifying what I believe has always been, and continues to be, the intent of Congress: that reasonable attorneys' fees be available to parents of handicapped children *who prevail in a civil court action* to enforce their child's right to education.

131 CONG.REC. at 1980 (emphasis added). Likewise, in *proposing the substitute to the bill reported out of committee,* Senator Weicker stated:

> The bill reverses the Supreme Court's Smith versus Robinson decision of July 5, 1984. In that decision, the Court ruled, contrary to the original intent of Congress, that Public Law 94–142 does not allow the award of attorney's fees to parents who, after exhausting administrative procedures, *prevail in a civil court action* to protect their child's right to a free appropriate public education....

> . . . .

> ... I urge my colleagues to support this important piece of legislation which will restore to parents of handicapped children the right to be awarded attorney fees and other reasonable expenses *when they must go to court* to secure the educational rights promised to them by Congress.

*Id.* at 21,389, 21,390 (emphasis added).

Little if anything can be inferred from these and like statements by other Senators.[16] In stating that a parent who ulti-

---

15. This version, like the final version of the bill, contained the action or proceeding language. *See* S. 415, § 2, 99th Cong., 2nd Sess., 131 CONG. REC. 1980 (1985).

16. *See, e.g., id.* at 21,390 (statement of Sen. Stafford) ("This bill amends [EHA] to make reasonable attorney's fees available to parents *who prevail in court actions* filed under [EHA].").

mately prevails in court would be entitled to recover his fees, Senator Weicker did not expressly commit himself one way or the other on whether a parent who prevails at the administrative level would likewise be entitled to recover his fees. Nor was the setting of the debate such that this omission can reasonably be viewed as signalling *disagreement* with such a proposition; Senator Weicker did not purport to be furnishing an *exhaustive* explanation of the bill's applications, but only an explanation of the bill's application to the facts of *Smith v. Robinson.* Indeed, far from any point disparaging the suggestion that HCPA would authorize fees for a parent who prevails at the administrative level, Senator Weicker signed the "additional views" portion of the committee report, which, as we have indicated, expressly incorporated the Court's analysis in *Gaslight.*[17]

At most, D.C. has shown that not *all* Senators at *all* times held or expressed a view on whether a parent who prevailed at the administrative level could recover his fees. But in the absence of even one Senator who expressly took issue with the construction of "action or proceeding" offered by the committee report and reiterated by Senator Simon on the floor, we accept that view as the one adopted by the full Senate.

### 3. Conference Committee

The disposition of the respective House and Senate bills in conference furnishes the strongest evidence that *both* chambers intended HCPA to authorize fees for parents who prevail in EHA administrative proceedings. *See Demby v. Schweicker,* 671 F.2d 507, 510 (D.C.Cir.1981) (Opinion of MacKinnon, J.) (noting that conference committee report "is the most persuasive evidence of congressional intent" after statutory text itself). As a concession to those Representatives who opposed awarding fees to parents who prevail at the administrative level, the House bill contained a "sunset"

provision phasing out this authority after four years. *See* H.R. 1523, 99th Cong., 2nd Sess. 6(a)–(b), 131 CONG.REC. 31,370 (1985).[18] This provision was eliminated in the conference bill. The conference report explained:

> The House amendment, but not the Senate bill, sunsets the court's authority to award fees at the administrative level after a period of time specified in the legislation.

> The House recedes.

H.R.CONF.REP. No. 687, 99th Cong., 2d Sess. 7 (1986), U.S.Code Cong. & Admin. News 1986, p. 1809. The clear implication is that the resulting bill retains without restriction "the court's authority to award fees at the administrative level."

D.C. unconvincingly suggests that the conferees may have abandoned the sunset provision in order *to clarify* that HCPA does not authorize fees for parents who prevail at the administrative level. If the conferees had intended to delete the sunset provision as superfluous, we do not think they would have described the House as "reced[ing]" to the Senate position on "the court's authority to award fees." *Cf. North Haven Bd. v. Bell,* 456 U.S. 512, 528–29, 102 S.Ct. 1912, 1921–22, 72 L.Ed.2d 299 (1982) (use of word "recede" conveys that "the Senate version ... prevailed for substantive reasons," not stylistic reasons).

Moreover, D.C.'s theory is inconsistent with the post-conference characterization of HCPA in the House. In explaining the final bill to their colleagues, the House conferees, who included Representatives who originally opposed recovery of fees at the administrative level altogether, expressed disappointment with the deletion of the sunset provision:

> [W]e have authorized the awarding of fees at the due process hearing system level in disputes which do not go on to court on a substantive issue. I fear that

---

**17.** Indeed, Senator Weicker, one of the floor managers of the bill, never took issue with Senator Simon's statements that HCPA would apply to parents who prevail in administrative proceedings.

**18.** This objective was to be accomplished by substituting the phrase "civil action" for the phrase "action or proceeding." *See id.* § 6(a).

this ... provision may prove to be a serious mistake....

....

[But] [i]n good conscience, I believe that the good outweighs the bad and for that reason, I shall vote for this conference agreement.

132 CONG.REC. 17,609 (1986) (statement of Rep. Bartlett).

I do not support the one provision which provides open ended authority to pay attorney's fees at the administrative level. Despite this reservation, I will vote for the conference report and I urge my colleagues to do the same.

*Id.* at 17,611 (statement of Rep. Jeffords). Unless we are to assume that these Representatives totally misunderstood what transpired in conference—an assumption that we have *no* ground to credit—it is clear from their statements that the conferees understood deletion of the House sunset provision as removing any limit on the court's authority to award fees to parents who prevail at the administrative level.

### 4. Contemporaneous Executive Construction

The authority of courts under HCPA to award fees to parents who prevail in administrative proceedings is also supported by executive branch interpretations expressed contemporaneously with the legislation's enactment. In response to House inquiries, the Secretary of Education ("Secretary") indicated that he was dissatisfied with the version of HCPA enacted by the Senate because

[t]he court could also award fees for administrative proceedings *where no court case resulted so long as the parents prevailed in those proceedings.*

Letter from W. Bennett, Secretary of Education, to Rep. S. Bartlett (Sept. 10, 1985) (emphasis added), *reprinted in* Addendum to Brief for Appellees at A-11. When the bill was presented to the President, the Secretary reiterated this concern, but nonetheless urged that the bill be signed into law. *See* Letter from W. Bennett, Secretary of Education, to J. Miller, Director, Office of Management and Budget (July 25, 1986), *reprinted in* Addendum to Brief for Appellees at A-16, A-17.

D.C. argues that we should disregard these statements because the Department of Education has no delegated enforcement responsibilities under HCPA. However, our duty to defer to an agency's reasonable construction of its own organic statute, *see Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984), does not exhaust our interest in what the executive has to say about ambiguous statutes. Communicated to Congress in the midst of its deliberations, the Secretary's views in this case formed part of the legislative background. *See, e.g., United States v. Vogel Fertilizer Co.,* 455 U.S. 16, 31, 102 S.Ct. 821, 830, 70 L.Ed.2d 792 (1982) (Court "attach[es] 'great weight' to agency representations to Congress when the administrators 'participated in drafting and directly made known their views to Congress in committee hearings' " (quoting *Zuber v. Allen,* 396 U.S. 168, 192, 90 S.Ct. 314, 327–28, 24 L.Ed.2d 345 (1969)). Had the Secretary misapprehended the effect of HCPA on this point, Congress would have had a strong institutional incentive to correct him in order to forestall any veto threat. Consequently, we construe Congress' failure to challenge the Secretary's interpretation as further confirmation that Congress *did* intend HCPA to authorize recovery of fees by a parent who prevails at the administrative level.

### III. CONCLUSION

Like the four other circuit courts that have addressed this question, we conclude that both the text and the legislative history of HCPA evidence congressional intent to authorize recovery of fees by a parent who prevails in EHA administrative proceedings. Therefore, we vacate the decision of the panel and affirm the District Court's determination that Moore was entitled to recover the fees incurred in her successful administrative proceedings against D.C. We also remit the case to the

panel for further consideration of D.C.'s challenge to the size of the fee award.

*It is so ordered.*